USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 1/19/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GLYNNIS WYNN and KATELYNN
EDGERLY, *individually and on behalf of all others similarly situated*,

                    Plaintiffs,

           v.

TOPCO ASSOCIATES, LLC,

                    Defendant.

No. 19-CV-11104 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

      Plaintiffs Glynnis Wynn and Katelynn Edgerly[1] brought this putative class action suit against Defendant Topco Associates, LLC, asserting that Defendant's "Vanilla Almondmilk" product is labeled in a way that is misleading to consumers, in violation of the New York General Business Law as well as several other common law and statutory protections. The gravamen of the complaint is that the word "Vanilla" on the product's label falsely communicates to a reasonable consumer that the beverage's flavor derives entirely from real vanilla, when in fact Defendant's product includes non-vanilla flavors. Now before the Court is Defendants' motion to dismiss Plaintiffs' first amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. 25. For the reasons that follow, the motion is granted. The Court, however, grants Plaintiffs leave to file a Second Amended Complaint to cure

---

[1] Jonita Cummings was listed as a plaintiff on the original complaint, filed December 04, 2019, *see* Dkt. 1, but is no longer listed as a plaintiff in the operative amended complaint, filed June 30, 2020, *see* Dkt. 21. The Clerk of Court is respectfully directed to amend the caption of the case as above.

the deficiencies identified below, to the extent that they have a good-faith basis to do so. Any amended complaint shall be filed no later than February 19, 2021.

## BACKGROUND

The following facts are drawn from Plaintiffs' First Amended Complaint, Dkt. 21 ("Compl."), and are assumed to be true for the purpose of resolving this motion. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

Defendant manufactures and distributes a vanilla-flavored non-dairy almond drink under the Full Circle Market brand, which is available to consumers at Price Chopper supermarkets. Compl. ¶¶ 1, 111. The product is labeled on the front of the carton as "Vanilla Almondmilk," as reflected in the following image:



*Id.* ¶ 3.

Plaintiffs purchased the product at Price Chopper stores near to their homes in 2019 and 2020, "expect[ing] its vanilla flavor to not be enhanced by artificial flavors." *Id.* ¶ 112. As the complaint alleges, the use of the word "vanilla" without qualification communicates to consumers that *all* of the product's flavor and vanilla taste derives from real vanilla. *Id.* at 3.[2] When Plaintiffs saw that Defendant's product package did not display any qualifying terms such as "vanilla-*flavored*," "contains artificial flavors," or "with *other* natural flavors," they drew the conclusion that the beverage's vanilla taste was supplied "only from . . . vanilla beans." *Id.* ¶ 35 (emphasis added).

In fact, Plaintiffs allege, Defendant's Vanilla Almondmilk is flavored by more than just real vanilla extract. Plaintiffs allege that the drink contains certain non-vanilla flavors, in addition to a trace amount of real vanilla—a blend known in the trade as "Vanilla With Other Natural Flavors." *Id.* ¶¶ 36, 67–69. The presence of non-vanilla flavors in Defendant's product, including vanillin, maltol, and piperonal, was detected through a process called "gas chromatography-mass spectrometry" testing (GC-MS). *See id.* ¶¶ 51-67.[3] The presence of non-vanilla flavors can also be inferred from the product's ingredient list, which lists "'Natural Flavors' as the only flavoring

---

[2] The source of natural vanilla flavor is the tropical orchid *V. planifolia*. *Id.* ¶ 16. The complaint alleges that science has been unable to duplicate the rich complexity of vanilla flavor that is produced by real vanilla. *Id.* ¶ 34.

[3] The complaint characterizes the vanillin, maltol, and piperonal in Defendant's product as "artificial" flavors. Compl. ¶¶ 61, 65, 75, 151. *See also id.* ¶ 4 (the product "contains undisclosed artificial flavors."). However, as discussed in greater detail below, vanillin, maltol, and piperonal can be either artificial or natural depending on their derivation, *see* 21 C.F.R. § 101.22(a)(1), and the complaint is devoid of non-conclusory allegations that the vanillin, maltol, and piperonal used in Defendant's product are of the artificial sort. *See supra* at 11–13; *see also Barreto v. Westbrae Natural*, No. 19-CV-9677 (PKC), 2021 WL 76331, at *3–4 (S.D.N.Y. Jan. 7, 2021) (dismissing similar claim where the complaint failed to plead facts supporting the assertion that the maltol and vanillin in the defendant's product were artificial).

3

ingredient." *See id.* ¶ 38 (listing the product's ingredients as "Almondmilk (filtered water, almonds), evaporated cane syrup, tricalcium phosphate, <u>natural flavors</u>, sea salt, gellan gum, dipotassium phosphate, xanthan gum, sunflower lecithin, Vitamin A palmitate, Vitamin D2, D-Alpha tocopherol (Vitamin E)" (emphasis added); *id.* ¶ 44 ("The common or usual name for a flavor ingredient that contains vanilla *and* non-vanilla natural flavors is 'Natural Flavor.'").

Had Plaintiffs known that the source of the vanilla flavor in Defendant's beverage was not exclusively genuine vanilla extract, they assert that they would not have purchased it or paid as much money for it. *Id.* ¶ 153. And they allege that they are not alone in this regard. *Id.* ¶ 98. Consumers today are willing to pay more for products labeled solely with the term "vanilla"—as opposed to say, "vanilla-flavored"—because they want and expect the flavors of those products to be supplied only from real vanilla beans. *Id.* ¶¶ 34–35. Plaintiffs suggest that many an unwitting customer has bought Defendants' product in reliance on the representations and omissions on its front label and ingredient list, which together imply that the almond milk's "flavor contain[s] only vanilla flavoring from vanilla beans and [does] not contain artificial flavors." *Id.* ¶ 110, 112.

Plaintiffs filed the operative class-action complaint on June 30, 2020, asserting claims against Topco for (1) violations of Sections 349 and 350 of the New York General Business Law ("GBL"), which prohibit deceptive business practices and false advertising, (2) negligent misrepresentation, (3) breaches of express warranty, the implied warranty of merchantability, and the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, (4) fraud, and (5) unjust enrichment. Compl. at 24–27. Plaintiffs seek both monetary damages and injunctive relief that would require Defendant to correct its allegedly misleading labeling. Defendant moved to

4

dismiss the amended complaint, arguing principally that the "Vanilla Almondmilk" label is not materially misleading to a reasonable consumer. *See* Dkt. 26.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but "whether [her] complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011) (citation omitted). In answering this question, the Court must "accept[] all factual allegations as true, but 'giv[e] no effect to legal conclusions couched as factual allegations.'" *Stadnick*, 861 F.3d at 35 (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)).

## DISCUSSION

### I. Plaintiffs' New York General Business Law Claims Fail Because the Complaint Fails to Plausibly Allege that the "Vanilla" Label Is Misleading

Plaintiffs' first cause of action arises under Sections 349 and 350 of the New York General Business Law ("GBL"). Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce," whereas Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce." GBL §§ 349–50. To successfully assert a claim under either section, "a plaintiff must allege that a defendant has engaged in (1)

5

consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker, Merrall & Condit Co.*, 944 N.Y.S.2d 452, 452 (2012)). The allegedly deceptive acts or representations must be misleading to "a reasonable consumer." *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 (2002). Although the question of whether a business practice or advertisement is misleading to the reasonable consumer is generally a question of fact, *see Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 295 (S.D.N.Y. 2015), it is "well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

Plaintiffs argue that the word "Vanilla" in Defendant's "Vanilla Almondmilk" is misleading to a reasonable consumer because it implies that the beverage's flavor is derived *exclusively* from real vanilla, when in fact Defendant's product contains both real vanilla and other natural and artificial flavors. *See* Pls. Opp. at 7, 12; *see also* Compl. ¶ 35 ("Consumers expect the Product's flavor to be supplied only from the characterizing food ingredient of vanilla beans."); *id.* ¶ 36 ("[T]he Product contains artificial flavors and non-vanilla flavors, which provide its vanilla taste."). And Plaintiffs argue that this is not only misleading but *materially* so, *see Orlander*, 802 F.3d at 300, in that today's consumers are attuned to the distinction between artificial and natural flavors and will pay a premium for natural flavoring. *See* Compl. ¶¶ 5-7.

The Court accepts Plaintiffs' allegations that Defendant's product is not exclusively flavored by genuine vanilla extract. The Court also assumes that Plaintiffs are correct that this distinction is material—that is, that a reasonable customer cares about what share of the vanilla flavor in a vanilla-flavored beverage derives from natural vanilla. *See id*. Nonetheless, the Court

6

finds that Plaintiffs have failed to plausibly allege that a reasonable customer would in fact conclude that the word "vanilla" on a product's front label implies that the product's flavoring was derived *exclusively* from natural vanilla extract, such that the front label would be misleading.

The Complaint's allegations that consumers expect a product labeled "Vanilla Almondmilk" to be flavored *exclusively* with real vanilla are conclusory statements that the Court is not required to accept. *See Iqbal*, 556 U.S. at 678. The Complaint alleges at several points that the product's use of the word "vanilla" without qualification creates a reasonable expectation for consumers that all of a product's flavor and vanilla taste is from vanilla beans. *See, e.g.,* Compl. at pp. 3, 8, ¶ 35–36. But the Complaint does not substantiate these allegations in a manner that "nudge[s] [that] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Unlike, for example, in a similar case brought in this District, Plaintiffs do not attempt to marshal consumer survey data to support their allegation that reasonable customers interpret "vanilla" to mean "flavored with exclusively natural vanilla." *Cf. Pichardo v. Only What You Need, Inc.*, No. 20-cv-493 (VEC), 2020 WL 6323775, at *1, *4 (S.D.N.Y. Oct. 27, 2020) (discussing survey evidence, although nonetheless declining to credit it). Plaintiffs point to a range of federal labeling regulations as evidence of what consumers should expect different types of labels to imply about the contents of their products. *See, e.g.,* Compl. ¶¶ 9–15, 19–30. But even if Plaintiffs are correct about what the federal regulations require—a point Defendants dispute, *see* Defs.' Mot. at 16—the complaint does not allege that reasonable consumers are aware of these complex regulations, much less that they incorporate the regulations into their day-to-day marketplace expectations. There is "no extrinsic evidence that the perceptions of ordinary consumers align with these various labeling standards." *N. Am.*

7

*Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 519 (S.D.N.Y. 2013) (finding that a product's labeling was not likely misleading to consumers under the GBL even though its labeling violated FDA standards). The federal regulations cited by Plaintiffs are therefore insufficient to establish that, under New York law, a consumer is likely to be misled by the word "vanilla" on the front of Defendant's almond milk. *See Steele v. Wegmans Food Markets, Inc.*, No. 19 CIV. 9227 (LLS), 2020 WL 3975461, at *2 (S.D.N.Y. July 14, 2020) ("The point here is not conformity with this or that standard (which is left to the authorities to regulate) but whether the marketing presentation was deceptive.").[4]

Four judges in this District have recently rejected similar claims as a matter of law. *See Pichardo*, 2020 WL 6323775, at *3 (vanilla-flavored protein beverage); *Steele*, 2020 WL 3975461, at *3 (vanilla-flavored ice cream); *Cosgrove v. Blue Diamond Growers*, No. 19-cv-8993 (VM), 2020 WL 7211218, at *3 (S.D.N.Y. Dec. 7, 2020) (vanilla-flavored almond milk); *Barreto v. Westbrae Natural*, No. 19-CV-9677 (PKC), 2021 WL 76331 (S.D.N.Y. Jan. 7, 2021) (vanilla-flavored soymilk). In dismissing the *Pichardo* lawsuit, Judge Caproni found that the plaintiffs failed to adequately plead a material misrepresentation where the defendant's beverage was labeled with the words "Smooth Vanilla," even though the drink's vanilla taste did not come entirely from real vanilla. *See Pichardo*, 2020 WL 6323775, at *3. Noting that "the label on Defendant's protein drink does not state that it is 'made with vanilla extract' or even contain the words 'vanilla extract,'" Judge Caproni found "no basis . . . to conclude that a reasonable

---

[4] *See also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 127 (2d Cir. 2017) ("[W]hen . . . challenged acts are not inherently deceptive so as to violate GBL § 349, regardless of whether they violate another statute, such acts cannot be re-characterized as 'deceptive' simply on the grounds that they violate another statute which does not allow for private enforcement."); *Barreto*, 2021 WL 76331, at *5.

consumer would . . . believe that all (or even most) of the vanilla taste comes from vanilla extract." *Id*. The court continued:

> When consumers read vanilla on a product label, they understand it to mean the product has a certain taste. It is difficult to comprehend what is misleading when the Defendant's [beverage] tastes like vanilla. Had Defendant's label contained other qualifying words, such as "made with," "contains," or "vanilla beans," a reasonable consumer might be led to believe that vanilla from vanilla extract is the exclusive or primary flavor ingredient, but that is not the case here.

*Id*. at *5. Similarly, here, Defendant's "Vanilla Almondmilk" front label makes no representations whatsoever about the source of the vanilla flavor or the ingredients constituting it—and indeed Plaintiffs acknowledge that the flavor is at least partially constituted by real vanilla. Compl. ¶¶ 67–68. Under these circumstances, Plaintiffs have failed to plausibly allege that a reasonable consumer would see a "Vanilla Almondmilk" beverage and be misled into concluding that the vanilla flavor derived exclusively from real vanilla. *See Barreto*, 2021 WL 76331, at *3 (dismissing similar GBL claim where "[t]here [was] no claim anywhere on the packaging that natural vanilla is the predominant source of the vanilla flavor.").

    The cases relied on by Plaintiffs to urge a contrary conclusion are inapposite. Plaintiffs rely on the Second Circuit's decision in *Mantikas v. Kellogg*, which held that the plaintiffs had sufficiently alleged that the label on a box of Cheez-It crackers was misleading when it said "made with whole grain," despite the fact that the crackers contained more white flour than whole wheat flour. 910 F.3d 633 (2d Cir. 2018). The Second Circuit held that the mere fact that the crackers did contain *some* whole grain was insufficient to defeat the lawsuit, because the box's bold-faced "Made With Whole Grain" claim arguably "communicate[d] to the reasonable consumer that the grain in the product [was] predominantly, if not entirely, *whole* grain." *Id*. at 637. Moreover, it was irrelevant to the analysis that the ingredient list on the back of the box clarified that enriched white flour was the predominant ingredient, since "reasonable consumers

9

should not be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Id*. at 637 (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)).

*Mantikas*, however, is distinguishable in a crucial respect. The claim on the Cheez-It box in that case—"made with whole grain"—was an express claim about ingredients, and one that strongly suggests that that the crackers were made predominantly or exclusively with whole grain. Here, by contrast, Defendant's front label makes no explicit claims about the ingredients constituting the flavor; it does not, for example, say "made with real vanilla extract" or even mention vanilla extract at all. It uses only the word "vanilla," which as Judge Caproni noted in *Pichardo* is likely to be interpreted by a reasonable consumer as a description of the flavor or taste rather than the ingredients. *See Pichardo*, 2020 WL 6323775, at *4 ("[S]tating that a protein drink is vanilla flavored when it is, even without clarifying the source of the vanilla, does not mislead because reasonable consumers would expect a vanilla taste, and that is exactly what they get."); *see also Cosgrove*, 2020 WL 7211218, at *3 (granting motion to dismiss after finding that vanilla almond milk product was "not misleading because a reasonable consumer would associate the representation of 'Vanilla' — with no additional language modifiers — to refer to a flavor and not to vanilla beans or vanilla extract as an ingredient."). This distinction also may explain the different result reached by Judge Cogan in the Eastern District of New York in a similar case, in which the court found that plaintiffs had plausibly stated a claim for material misrepresentation when a product was advertised as "*Made With* Aged Vanilla," even though the flavor was predominantly artificial. *See Sharpe v. A&W Concentrate Co.,* No. 19-CV-768 (BMC), 2020 WL 4931045, at *5 (E.D.N.Y. Aug. 24, 2020) (emphasis added). If, like in

*Mantikas* and *Sharpe*, Defendant's product claimed to be "made with" vanilla, the result here might well be different.

Plaintiffs also rely on *Izquierdo v. Panera Bread Co.*, in which Judge Broderick held that a plaintiff had plausibly alleged that a reasonable consumer would be misled by Panera's sale of a "Blueberry Bagel," when the bagel contained only trace amounts of real blueberries and a greater proportion of imitation blueberries. *Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 461 (S.D.N.Y. 2020). The court's conclusion in *Izquierdo* was based on the fact that a customer purchasing a blueberry bagel from the counter at Panera would see the blueberries and, without any other information, conclude that they were real when in fact they were imitation. *See id*. at 457 (noting the complaint's allegation that "a reasonable consumer cannot discern the imitation from the actual blueberry ingredients."). Under those circumstances, and in light of Panera's claim on a sign above the counter to provide "clean food," Judge Broderick found a likelihood that a consumer would be misled. *Id*. at 461–462. The misleading element in *Izquierdo* was the fact that a customer would see something that looked like a blueberry and conclude, incorrectly, that it was a real blueberry. But as discussed above, Plaintiffs have not plausibly alleged that Defendant's use of the word "vanilla," without more, represents a claim about the constituent elements of the vanilla flavor. The Court accordingly finds that Plaintiffs have failed to state a claim that the front label of Defendant's beverage is misleading.

**II.    Plaintiffs Have Not Plausibly Alleged That the Ingredient List Fails to Disclose "Artificial Flavors"**

Although Plaintiffs' claims focus primarily on the word "Vanilla" on the front label of Defendant's product, Plaintiffs also assert that the ingredient list itself is misleading to a reasonable consumer, in that the product contains undisclosed artificial flavors. *See* Pls. Opp. at 8–12 ("Defendant's use of vanillin, maltol, and piperonal with vanilla requires [that] the Product

11

be labeled 'artificially flavored.'"); Dkt. 39; Compl. ¶ 127 ("The ingredient list declaration of 'natural flavor' fails to tell consumers and plaintiff that a trace amount of vanilla is present and what they taste as vanilla is actually from artificial flavors."). If the product in fact contains undisclosed "artificial" flavors, as opposed to real vanilla and other natural non-vanilla flavors, the ingredient list might well be misleading to a reasonable consumer. *See* Dkt. 40 at 14 (Defendant's acknowledgment at oral argument that, "if your product includes artificial flavors, you have to disclose it as including artificial flavors, there's no question about that."). Put another way, although the Court finds that the "Vanilla Almondmilk" label makes no representations about the share of the product's flavoring that derives from real vanilla as opposed to natural non-vanilla additions, the ingredient list, by omitting any mention of artificial flavoring, does make a representation that all the flavors in the product are natural.

However, as Defendant convincingly argues, the complaint fails to sufficiently allege that the non-vanilla flavors in the almond milk are in fact "artificial." *See* Dkt. 38 at 2–3; Dkt. 40 at 3–15. The complaint alleges that the product "contains maltol, an artificial flavor," "contains the artificial flavor piperonal," and "fail[s] to disclose vanillin, an artificial flavor." Compl. ¶¶ 61, 65, 75. But maltol, piperonal, and vanillin can be either artificial or natural, depending on how they are derived. Federal regulations provide that

> The term artificial flavor or artificial flavoring means any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof. Artificial flavor includes the substances listed in §§ 172.515(b) and 182.60 of this chapter *except where these are derived from natural sources*.

21 C.F.R. § 101.22 (emphasis added). The complaint itself acknowledges that vanillin, maltol, and piperonal can be "naturally produced" and can appear in the flavor compound "Vanilla With Other Natural Flavor." Compl. ¶ 50; *see also id*. ¶¶ 52, 83 (vanillin is found in natural vanilla

12

beans); ¶ 64 (maltol is found in natural vanilla); ¶ 66 (citing article that states piperonal is found, albeit in small amounts, in natural vanilla beans).

Here, as Plaintiffs appeared to acknowledge at oral argument, *see* Dkt. 40 at 23, 29, the complaint does not include specific allegations that the added non-vanilla flavors in Defendant's product are artificially derived. The complaint notes that maltol and piperonal appear on the list of substances at 21 C.F.R. § 172.515(b). But as noted, the substances on that list are deemed "artificial flavor" only where they are not "derived from natural sources." *Id*. § 101.22. Absent any factually substantiated allegations that the vanillin, maltol, and piperonal in Defendants' product are not derived from natural sources, the Court finds that Plaintiffs have failed to allege the presence of artificial flavors, and their claim that the ingredient list makes a materially misleading omission thus fails.

Judge Castel recently reached a similar conclusion in *Barreto*. Although the plaintiff's complaint asserted that the product contained artificial flavors, including vanillin and maltol, Judge Castel found that the complaint's analysis failed to "plausibly support the conclusion that the added vanillin comes from artificial rather than natural sources" and that the plaintiff's product testing made "no finding whether the maltol was derived artificially or naturally." *Barreto*, 2021 WL at *3-4. Judge Castel contrasted the plaintiff's case with *Marotto v. Kellogg Co.*, No. 18-cv-3545 (AJH), 2018 WL 10667923, at *7–8 (S.D.N.Y. Nov. 29, 2018), in which the plaintiff adequately alleged that a product contained the artificial form of an ingredient by "specif[ying] in detail the chemical differences between the natural and artificial forms of the ingredients and identif[ying] differences in their manufacture." *Id*. at *4. As in *Barreto*, the lack of sufficient allegations here that the purportedly artificial flavors are in fact artificial is fatal to Plaintiffs' claim that the ingredient list has made a material omission.

13

### III.  Plaintiffs' Other Claims All Fail as a Matter of Law

Plaintiffs also assert claims for negligent misrepresentation, breach of warranty, fraud, and unjust enrichment. These claims, which largely hinge on the same theory of misleading business practices rejected by the Court above, all fail as a matter of law. *See Barreto*, 2021 WL 76331, at *6 (dismissing claims for negligent misrepresentation, fraud, breach of warranty, and unjust enrichment on the basis that the court had "already determined that [plaintiff] has failed to allege that the product's labeling would be likely to deceive or mislead a reasonable consumer").

To state a claim for negligent misrepresentation under New York law, a plaintiff must plead "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011). As discussed above, the Court finds that Plaintiffs have not plausibly alleged that Defendant's product label imparted incorrect information to the Plaintiffs. This claim fails for the additional reason that Plaintiffs have not plausibly alleged the existence of a special relationship or a privity-like relationship. *See Sarr v. BEF Foods, Inc.*, No. 18-cv-6409 (ARR) (RLM), 2020 WL 729883, at *6–7 (E.D.N.Y. Feb. 13, 2020) (finding no special relationship where the alleged misrepresentations were on a food product's label, and finding no privity absent a direct buyer-seller relationship between the parties); *see also Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 584 (2d Cir. 2005) ("no duty of care arises" for purposes of a negligent misrepresentation claim when the alleged misrepresentation is "directed at a faceless or unresolved class of persons") (internal quotation marks omitted). The negligent representation claim thus fails.

Plaintiffs' claim for breach of express warranty fails for similar reasons. To state a claim for an express breach of warranty under New York law, the plaintiff must plead "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014). Because the Court finds that Plaintiffs have failed to plausibly allege that Defendant's product does not comport with the statements contained on the label, this claim fails. Plaintiffs' claim for breach of implied warranty fails for the additional reason that there is no allegation that the almond milk was unfit for human consumption. *See Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154 (JG), 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015) (dismissing implied warranty claim because "[w]here the sale of a food or beverage is concerned, courts have ruled that the product need only be fit for human consumption to be of merchantable quality.").

Plaintiffs' claim of fraud under New York law similarly fails. Under New York law, stating a claim for fraud requires alleging (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff. *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997). Putting aside the question as to whether Plaintiffs have alleged fraud with the requisite level of specificity under Rule 9(b) of the Federal Rules of Civil Procedure, the Court finds that Plaintiffs have failed to allege a material misrepresentation of fact or omission since, as discussed above, a reasonable consumer would not conclude that the word "vanilla" on the product's label communicates that the flavor derives exclusively from real vanilla.

Finally, Plaintiffs' unjust enrichment claim also fails because, as discussed above, Plaintiffs have not plausibly alleged any misleading or incorrect statements by the Defendants. *See Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 706 (2d Cir. 2020) (summary order) (affirming dismissal of unjust enrichment claim when the court had rejected plaintiff's underlying theory for why the enrichment was "unjust"); *see also Harris v. Mondelez Glob. LLC*, No. 19-CV-2249 (ERK) (RER), 2020 WL 4336390, at *3 (E.D.N.Y. July 28, 2020).

## IV. Leave to Amend

Although the Court grants Defendant's motion to dismiss, it also grants Plaintiffs leave to file a second amended complaint. *See* Fed. R. Civ. P. 15(a)(2). To be viable, any amended complaint would have to plead non-conclusory, substantiated allegations to the effect that (a) a reasonable consumer would actually believe that the word "vanilla" on the product's front label implies that *all* of the product's flavoring is from genuine vanilla extract; and/or that (b) the vanillin, maltol, and piperonal used in Defendant's product are not derived from natural sources, such that they must be deemed artificial flavors, *see* 21 C.F.R. § 101.22(a)(1). Although the Court is skeptical that Plaintiffs can make such a showing, in light of Rule 15(a)(2)'s "permissive standard," *see Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015), it will nonetheless permit Plaintiffs to file an amended complaint—if and only if they have a good faith basis to do so. *See Noskov v. Roth*, No. 19-CV-7431 (RA), 2020 WL 4041125, at *9 (S.D.N.Y. July 17, 2020).

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is granted. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 25. Any amended complaint, should Plaintiffs choose to file one, shall be due no later than February 19, 2021.

16

Failure to file an amended complaint by that date will result in dismissal of this case with prejudice.

SO ORDERED.

Dated:    January 19, 2021
             New York, New York

_____
Ronnie Abrams
United States District Judge